FILED by PE D.C.
MAR 2 5 2015
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20049-CR-COOKE

UNITED STATES OF AMERICA

v.

LESLIE ROBERTS III,

Defendant.
_______________________________________/

## STIPULATED FACTUAL PROFFER

The United States and the defendant, Leslie Roberts III (hereinafter, the "defendant"), agree that, were this case to proceed to trial, the government would prove the following beyond a reasonable doubt:

## OVERVIEW OF THE SCHEME

Leslie H. Roberts Jr. ("Roberts Jr.") was a Miami-based art dealer who owned a Coconut Grove gallery that sold original works of art by "P.M.", a popular New York-based artist. In short, Roberts Jr. defrauded gallery customers in two ways: (1) by selling them forged P.M. works of art and (2), in the case of consignment clients, accepting authentic P.M. works of art, returning forged P.M. works of art, and falsely claiming that the client's genuine works failed to sell. Among the forged works of art sold by Roberts Jr. were "mixed medias", which are often composed of acrylic painting and color lithography on paper. A large portion of the forged P.M. "mixed media" works were created by Roberts Jr.'s son, the defendant, who received compensation from Roberts Jr. in exchange for forged works of art.

## FORGERY OF CONSIGNED WORKS

In or around April 2010, Roberts Jr. and the defendant met at Max in the Grove where they discussed creating high-quality copies or forgeries of P.M. artworks. Around the same time, victim "E.S." arranged for Roberts Jr. to sell 17 P.M. paintings on consignment from Max in the Grove. E.S.'s paintings were original P.M. works of art. According to the contract between E.S. and Roberts Jr., which was signed on April 26, 2010, Roberts Jr. was to attempt to sell the paintings for amounts between $30,000 and $45,000, each. In exchange, Roberts Jr. was to keep a ten percent commission on each sale. The total value of the 17 paintings was approximately $635,000.

Prior to his delivery of the paintings to Roberts Jr., E.S. had 14 of the 17 paintings professionally photographed; E.S. personally photographed the remaining 3 paintings. Then, on April 26, 2010, E.S. traveled to Florida to deliver the 17 paintings to Roberts Jr. E.S. kept the certificates of authenticity provided by P.M.'s New York studio until such time as the paintings were sold by Roberts Jr. However, Roberts Jr. assured E.S. that the paintings would sell quickly and requested the original certificates of authenticity, which certificates E.S. provided.

Roberts Jr. sold two of the paintings for approximately $5,500 each and kept the profits, but soon realized that he would have to lower the sale price in order to sell the bulk of the consigned paintings. Roberts Jr. then enlisted the defendant to make copies of the artworks consigned by E.S. The defendant agreed to forge the P.M. paintings in exchange for payment.

The defendant came to Max in the Grove and took photographs of the consigned works. Within two weeks, the defendant was delivering forged works of art to Roberts Jr. several times per month.

**LARGE-SCALE FORGERY OF P.M. ARTWORKS**

Each time the defendant delivered forgeries, Roberts Jr. paid the defendant with either cash or a personal check. Roberts Jr. paid the defendant up to $3,000 for large P.M. forgeries, and eventually began paying $150 for each of the smaller "mixed media" works. The defendant was responsible for creating the "mixed media" forgeries. A co-conspirator was responsible for painting the larger works.

On March 22, 2011, Roberts Jr. sent an e-mail asking the defendant for forgeries of specific P.M. artworks. In his response, the defendant refers to the works by title, and explicitly addresses "coas," or certificates of authenticity, claiming they are "in production currently." He also asks his father, who was traveling on business, "Howa [sic] New York going?" Law enforcement officers later learned that, in addition to producing P.M. forgeries, the defendant was responsible for acquiring fake serial numbers and certificates of authenticity for the forgeries.

**CONSIGNMENT CLIENT FRAUD**

Over the course of the next year, Roberts Jr. reported to victim E.S. that the latter's P.M. paintings had not sold. During a visit by E.S. to Miami, E.S. met with Roberts Jr. to voice his/her concerns about Roberts Jr.'s failure to sell the paintings. During the course of the conversation, Roberts Jr. showed E.S. the certificates of authenticity. In subsequent interviews with law enforcement officers, E.S. said he/she believed these certificates were fraudulent based on the fact that, unlike the original, genuine certificates, the certificates Roberts Jr. showed E.S. did not have raised seals and appeared not to have original signatures.

Eventually, E.S. demanded that the P.M. paintings be returned. In July of 2011, Roberts Jr. agreed to send 13 of E.S.'s 17 paintings back to E.S., claiming that two had been sold. On

July 28, 2011, Roberts Jr. shipped 14 purported P.M. paintings back to E.S., who lives in Virginia, via UPS. On August 4, 2011, E.S. received the 14 paintings from Roberts Jr. E.S. noted that one of the paintings was an obvious forgery and contacted law enforcement. Upon further review by E.S., the FBI, and P.M.'s New York studio, it was determined that only one painting of the 14 was an original P.M. painting; the remaining 13 paintings were forgeries, supplied to Roberts Jr. by the defendant and a co-conspirator.

**UNDERCOVER INVESTIGATION**

In the fall of 2011, two private investigators hired by P.M.'s New York studio visited Max in the Grove, posing as a couple interested in purchasing art. The investigators videotaped numerous images inside Max in the Grove, including approximately 77 purported P.M. works that were for sale at the gallery. After reviewing the 77 works of art, which included a number of works produced by the defendant, P.M.'s New York studio concluded that none of the 77 works videotaped by the investigators was genuine.

On October 20, 2011, the investigators again visited Max in the Grove. The visit was audio recorded. During the visit, Roberts Jr. sold a purported P.M. work of art to the investigators for $700 and arranged to ship it to them at a UPS mailbox in Pembroke Pines, Florida. On November 7, 2011, law enforcement officers intercepted the UPS package. Included in the package was the work of art and a certificate of authenticity. The work of art and certificate of authenticity were then inspected by representatives of P.M.'s New York studio, who stated they were not authentic.

**OCTOBER 23, 2013 MEETING**

On October 23, 2013, Roberts Jr. met with the defendant and another co-conspirator in Coral Springs, Florida. During the meeting, which was audio and video recorded, Roberts Jr. said he needed a large number of additional forgeries and "good" serial numbers so that he could send a shipment of P.M forgeries to a Texas client. The defendant told Roberts Jr. he would be able to provide those items. The defendant, Roberts Jr., and the co-conspirator agreed to price terms for the production and delivery of the P.M. forgeries, and memorialized their agreement in writing.

The Parties agree that these facts, which do not include all facts known to the Government and the defendant, are sufficient to prove beyond a reasonable doubt the defendant's guilt with respect to Count 1 of the Indictment.

Date: 3/24/2015 By: ______________________
CHRISTOPHER BROWNE
ASSISTANT UNITED STATES ATTORNEY

Date: 3/24/2015 By: ______________________
ERIC COHEN
ATTORNEY FOR DEFENDANT

Date: 3/24/2015 By: ______________________
LESLIE ROBERTS III
DEFENDANT